Next we have Courthouse News Service v. Omundson. I'd like to reserve five minutes, please. Good morning, Your Honors. May it please the Court and Counsel. Keeley Duke on behalf of the appellant, Sarah Omundson. Idaho's electronic filing system meets the First Amendment right of access to judicial proceedings. And the district court decision should be reversed as a result and summary judgment awarded in Ms. Omundson's favor. Why does it meet the right to timely access? Because in Idaho, the moment a judicial proceeding is initiated, the press has immediate access to the complaint. Courthouse News, however, is not satisfied with that. It wants more, and it's been very successful across the country in arguing for more. But if you do a close reading of the PLANET Trilogy, that obviously this Court is well familiar with, and has been used throughout the country in many instances wrongly, PLANET is very, very different than the electronic filing systems that we deal with in the state of Idaho and other jurisdictions do across the country. Counsel, I wonder, I'm trying to determine what the district court did here in the relief, and I'm looking at the Memorandum of Decision and Order, and item number five in particular, where the judge says the court hereby enters a declaratory judgment that Omundson's policy is unconstitutional, and then says she is preliminarily and permanently enjoined from continuing any process that denies CNS timely access to new non-confidential civil complaints. Omundson has 90 days to bring her policies and procedures into substantial compliance with the court's ruling today. What do you think that means that you're required to do under the judgment? I don't know, Your Honor. Bluntly, already when a judicial proceeding is initiated, which is the very tenets that PLANET Trilogy were based upon, you look at press enterprises, you look at the Globe cases, they all talk about the right to access to proceedings, to cases, and the judge there obviously did not agree with us with respect to the fact that no proceeding had yet been initiated, but when you look to that open-ended, I'm not going to tell you what to do, but you need to do something, and CNS argues that they want near-immediate access. Well, let's talk about that. I mean, in most courts, certainly in the federal courts, once something is filed, absent, sealing, or confidential, it's immediately available to the public and to the press, and so I think it's a little bit disingenuous to say, well, we don't know what to do, because the court isn't telling you how to modify the systems, but you've already given the court various options that you have so that there would be access upon the filing. So I'm a little confused as to why you say you don't know what you could do. A few things there, Your Honor. Number one, when you look to the Planet case, the Ninth Circuit has only held that there is a right to access already filed, so already brought into the court system and actually creating a case. That's all Planet stands for. So in the event this court is expanding Planet to now include not yet reviewed or accepted complaints, if that is where the court is headed, then you look to a few of the alleged reasonable alternatives that CNS has proposed, which are auto-accept, which are press-review-cue. So first of all, the federal court uses auto-accept. We've noted on our filings, and we had all seven of our trial court administrators for our 44 counties, we have seven districts, all submit declarations as to why auto-accept would be an issue and create significant inefficiencies, potential risks of confidential information being put out into the ether, which I think we all worry about every day. And the numerous reasons why that doesn't work and why our current system does work, that's number one. Number two, when you look to the federal system, and I'll do respect to it, our federal courts, despite the fact our federal district judges are incredibly overwhelmed in a district that desperately needs more federal district judges, they're doing the best they can, but they are dealing with a caseload, as we indicated in our record for you all, that pales in comparison to the states. And so you don't run the issue that we run in the state of Idaho, for instance, with a filing in Ada County or Adams County. Under CNS's auto-accept rule, we cited to you all in the record statistics on how frequently Adams County So we have that. Then we have what you call the press review queue, and that would cost $108,000 or something, am I right? Or whatever. But it's going to cost some money, let's put it that way. So my question probably is a little preliminary to that, and that is, how do you define the right under the First Amendment? And we have cases that say, you know, if you have a substantive right, you can't use court rules, et cetera, to modify that. That's the Washington Southern Navigation case. So we have an odd situation here where you've defined what it means to be filed, but the result is that you have delays of varying amounts. It could be almost immediate, five minutes to 15 days, right? And I understand that, and I understand you have these individual court clerks or assistance court clerks who are poring through the complaints, but it seems to me that the question we have to decide is, what is the First Amendment right? Has that been violated? And if so, then leave to Idaho, and this is what I thought the district judge did, leave to Idaho to figure out how to then respond and not for us, the courts, to figure it out. Is that right? So a few things to that. So I respectfully disagree with the delay that you described. The delay is not once a complaint is accepted. Once it comes through. Let me say, let's back it up.  Once the litigant initiates the complaint, then you decide when it is accepted. Correct. And again, in the Planet Trilogy, Planet only provided that there was a right to access to already filed, accepted complaints. These are not accepted complaints yet, so that would be an expansion of the Planet. That was a paper filing case? Correct. So we're now in another world. And I understand that. And when you look to Planet III, Planet III makes clear that there are numerous tenets that need to be followed. First, even in the error of the EFS, like you represent, instantaneous public access to court filing, especially complaints, could impair the orderly filing and processing of cases with which clerks are charged. Number two, after all, litigants are not uploading their complaints to the Internet, as CNS would like. They are filing them with a court, making them subject to judicial administration. And third, the First Amendment does not require courts, public entities with limited resources, to set aside their judicial operational needs to satisfy the immediate needs of the press. That is all out of the Planet III case, and that is all based upon Judge Nye's ruling. Effectively, this is what the federal court would be doing. They would be requiring us to submit our complaints instantaneously for public access. We've described throughout our record as to why there's a peril to that. And actually, the Smith case that just was decided with respect to CNS, the Smith case took that real threat of cybersecurity, the scrapers, the bots that come into the press review queue, which is a public-facing queue, that then could come and scrape whatever data it wants to scrape, for good or bad. And so when you look to the courthouse news language itself, courthouse news was really trying to weigh that balance, even though it was paper filing. It was still commenting in the third edition that we've got to factor in EFS, and that does not provide an immediate access to submitted complaints. There is no case in the Ninth Circuit that has found that once you submit, you have a right to access. And similar, Your Honor, I know we looked at the case that you had issued related to the citations. Once a citation is provided to a soon-to-be defendant, that is not when the right attaches with respect to the First Amendment. Instead, it attaches once that proceeding initiates, which is you get back to the courthouse, the citation is followed and filed. So I know I'm... I have a couple questions. Sure. So I have a lot of sympathy for the administrative concerns that you're raising. On the other hand, I think a couple concerns I have. One is a technical question. So the complaint gets electronically, you know, I don't want to use the word filed, because I understand that's lodged. Perfect, thank you. Put in, like submitted for filing into the system. Then you, you know, I understand that staff resources are limited, and so there's some period of time that it takes for the five-minute process of reviewing and deciding whether to accept, and then it's deemed filed. It's deemed filed as of the moment they actually lodged it. Is that correct? So what... Like for the illegal concept of filing, everything would relate back actually to that. So if it was on Monday, didn't get accepted to Friday for purposes, all legal purposes, it would have been deemed filed back to the Monday, is that correct?  The Idaho Supreme Court provided a grace period of three days to litigants to correct errors if the filing, if the lodging is rejected. Or if there is additional time with respect to clerk review, that in no way impacts the litigants. So that is a balancing test that they've done. All right. So that's, I mean, that's to one extent to the arguments about whether it's filed or not. You know, I mean, because the filing is actually retroactive to the date of time of lodging. So that's a little bit of a metaphysical problem that we have here in determining the first amendment. The other argument that I somewhat find persuasive on the other side is, you know, even the filing of a complaint that is ultimately not accepted or has problems is arguably newsworthy. Right? You know, so I think that's one of the points that the district court made here. Right? And so, you know, and it's newsworthy as of the time that it was lodged. Right? You know, and arguably, at least that's the news argument that is not contingent on whether it's ultimately dotted all its I's and paid all its E's from the court's perspective. So how do you address that? So, again, it's newsworthy once it's initiated a judicial proceeding. And that's what, when you look to Globe, you look to Press Enterprises, they are all based on public scrutiny of the court system with respect to civil court proceedings. There's no proceedings. I mean, that's a question of definition, so we're kind of dancing around. Sure. So I have a couple of questions. It seems to me that in the typical first amendment analysis, we're often going to the time, place, and manner. And that doesn't really fit here. So I'd appreciate, at least as I keep thinking about it, time does, but place and manner don't really fit. I mean, it may be that we have this first amendment concept that just doesn't fit here. What's your position on that? It's a content-neutral process that the state of Idaho goes through. There's not redaction of specific types of cases or anything like that. It's a content-neutral process that simply goes through the clerk processing format, then once accepted. So do you think that the first amendment concept of time, place, and manner has any place in analyzing this kind of a restriction, which is wait until the clerk looks at it? Difficult to answer. I mean, I understand, and you've hit the nail on the head. I mean, the time issue is there, but not the place and manner, other than what I can say is, you know, the places within the clerks all following the same process that all the other clerks follow, and there's not some special process in Adams County versus Boise County. Let me ask a couple more, and I hope our presiding will indulge me, but on the question of confidentiality, isn't that the responsibility of the filer to redact? It's not the clerk or the courts. It's the filer, so that's why it's confusing to me that that's raised as an issue as to why we need to review this, because it's the filer's responsibility, not the court's. Is that right? Agreed it's the filer's responsibility, but I don't think that that absolves a court. If there are reasonable practices that could be put into place that do not impact the timely availability of filed complaints, that the district court or, excuse me, that our court clerks wouldn't have that obligation to do that, and that's one of the things that they are able to do and have done, where there's been an instance where a Social Security number has been included that should not have been. And so, yes, I agree, it's the filer's responsibility, but still, that doesn't absolve the courts from also. But that doesn't mean they couldn't do a double check if they want. Sure. You could release it. It's the filer's responsibility, but then the court, of course, as you point out, and like Judge Sung, I'm kind of sympathetic to these court clerks and these filing people, because they're under a mountain of electronics and paper. But these so-called filing errors, those can be fixed afterwards, and they don't really affect. It's unclear to me that there's sort of a disconnect between if I am a news service or the public. I'd like to see that complaint when it's filed, not 2 to 15 or however many days later. If there are filing errors, you could correct those afterwards, and that doesn't really change the fact that you have a lodged complaint out there before, does it? Two things. Number one, there's not 2 to 15 days out there. Our data that we've provided to you does not support that. The great, great majority of complaints. I understand, but there's a range. Of course. There's going to be some outliers, no question. But with respect to the second part of your question, and I'm sorry, I just lost it for a moment. Well, the second part really had to do with if there's some technical filing error or whatever, that can be fixed, and it really doesn't relate to the need for the first amendment right is the public access, public and press, and so-called filing errors can be fixed after the lodging, right? So we presented you with numerous clerks and trial court administrators who described the issues with that, and as they've indicated, there are significant efficiency issues. One of our administrators indicated from Ada County that, and this is SCR 195 to 212, Margaret Mulkin, her declaration, that e-file and serve, the clerks can communicate with the submitter through e-file and serve. Once it auto goes into our case management system, which is a separate system than e-file and serve, there is no ability to communicate with the submitter. So if there are issues, the clerks then need to go to e-file and serve, find the submitter's information, and then through their own one-on-one communication, presumably e-mail, their own independent e-mail, e-mail that person. And as she described, if that clerk goes on vacation, if that clerk, you know, is sick one day, if the clerk doesn't get to her e-mail, it doesn't get done. You also have the issues with respect to... Would you remind me, though, and maybe I missed in the record, where the so-called, not confidentiality, but technical filing errors, what kind of percentage are we talking about there? It usually ranges between 7% to 11% in the data. Okay, thank you. And, you know, we did cite to you all that, you know, we have 2 million-plus filings in the State of Idaho during that time period that we had, and it was in that 7% to 11% range where there were issues that needed to be corrected. And I'm sorry if this is addressed in your briefing, and I'm just not recalling this detail, but is there a reason why it has to switch from the one system to the other in order to make the lodge complaint available? So we purchased Tyler's system, and that's the way the Tyler system works. And so the State of Idaho invested $2 million to get the system. It then pays a licensing fee on a routine basis of, like, 563. I guess mine is maybe a simpler question. I mean, it's lodged, right? And court staff are able to, I assume, like, print it out, right, you know, and review it and decide whether to accept it before they transfer it from the one system to the other. I mean, couldn't they just print out the one that was lodged and put it in the press box? Like, I mean, and say, if you want to look at it, go ahead. It hasn't been accepted yet. It hasn't been deemed, you know, correct. You know, it hasn't been reviewed by the clerk's office yet, but it hasn't been transferred to our new system yet, but here's the box of stuff that got lodged today. Well, I mean, if that were the case, yeah, I mean, they could print those out, but I don't think that that would be an effective judicial resource. The point of going to the e-filing system was to reduce some of that. That's obviously a cost and expense, a time for the clerk to print it, to get it, to put it in the box. Well, forget about the printing, but with Tyler and with all these companies, you are purchasing primarily a custom-type system, and I did see a figure of $108,000. I don't know if that's the correct figure, but it might cost some money to change the computer system as to actually facilitate what we're talking about here, but I thought what the district court was saying, I'm not going to tell you what you have to do to get it from box A to B to C electronically. I'm going to leave that to the state. So at this point, nothing's been done, right? Correct. Everything. Pending the appeal. Yeah, pending the appeal. Everything is where it is. So let's say that, hypothetically, and I don't know, I think this is a complicated case. Let's say that the district court were to be upheld, then do you have an estimate of time that it might take to be able to find some way to comply with that? I mean, to do that and to still protect the issues that we have related to the auto accept and the undue burden that one of our clerks said would add three minutes to each review of every filing, which adds up over time, and to avoid the press review queue issues related to scraping, having information out there that's not yet part of a court record. It would be a revamping of our entire system, and I think one of the options would be, as you've indicated, that you go from, there's an ability to communicate with the submitter within the e-file and serve, but that's going to require us abandoning already a huge investment that the state of Idaho has made with respect to the Tyler system and either find a new system that will permit that communication or go to generating its own, and we all know that the cost of that would be incredible. You're sort of like baby is out with the bathwater, and I don't think that's kind of what might be required, although that may not be our job or Judge Nye's job to figure that out, but if the confidentiality is the requirement of the party and that really then, you know, of course there can be mistakes. The system that you now have, that can be scraped, hacked, et cetera, as we well know from many systems. Maybe it hasn't, but it can be. It can be. It's not. It hasn't been, but it can be. So I'm just saying the risks are out there. So you can't really have a risk-free system as a practical matter, but I think to me that this balancing of what you've put out, the cost, the time, et cetera, that those are important. Do those factors fall into defining what the First Amendment right is or defining the scrutiny and then saying, well, you meet the scrutiny because of all these, in effect, time and cost issues? I mean, I haven't really defined the question well, but that's really, you know, we were talking up here about all these issues, but when you get right down to it we've got to define the First Amendment right. We've got to figure out what scrutiny is going to apply to it and then what comes out the other end. And I'm worried about what's coming out the other end. Planet 3 defined that for us. Well, Planet 1 did. And that is already accepted complaints that have been through minimal processing that have been accepted. Those attach a right to timely access. Did they actually reject the argument that it's lodged complaints? No, they did not. So that's the question, right? Correct. That's an open question for us to answer. It would be an expansion of Planet 3, the Planet trilogy, in our view. I don't know if it would be an expansion so much as that was paper filing, which we all lived through for many years, both as lawyers and judges, but now we're in the electronic filing world. So there are principles from Planet 3 that are important, but they aren't necessarily controlling in an electronic world, are they? Well, I think that Planet 3 was trying to have them be controlling and was recognizing that there is no right to immediate access, which is what CNS wants and has demanded across this country and in many respects has gotten. But at the same time you've got to balance the impairment to the important interests that Ms. Amundson and the Idaho Supreme Court have with respect to their system. And so when you look to that, you look to the first question you asked, which is, is that the right? That's that first issue. Second is the scrutiny. I know we have a dispute of whether it's rigorous or strict. And we don't know what rigorous means except it's a word. It's a word. And Judge Smith, who also is with the Ninth Circuit and out of Idaho, so we're very proud of him as well. We are as well. Okay, good. We cited his concurring opinion because you do look to that. And why we need to get into the reasonable alternatives exist, that you only get there under that heightened rigorous standard, not under the lesser, more relaxed standard that was enunciated. Thank you. That's very helpful. And I know my time is up. I'll give you a couple minutes on rebuttal. Thank you. Because we took you over. And I did just want to note, our case management system is not public facing. So that data scraping issue, while an internal hacker could try to do something, it's not out in the ether. Ours is a closed system. Okay, thank you. Good morning. Jonathan Federley on behalf of the Appellee Courthouse News Service. When litigants submit new complaints to the court, they invoke the power of the government to resolve a dispute using public resources. The press and the public have a right to know about that, and the First Amendment right of timely access protects that right. This court should affirm the judgment below because the district court correctly found that the administrator failed to carry her burden of justifying her no-access-before-process policy under this court's rigorous scrutiny test from Planet 3. Counsel, I'm trying to understand what this concept of any process that denies CNS timely access. For example, as I understand the record, there was a time when Idaho reduced the hours that their clerk's office was open due to budgetary restraints. Is this something where, under this order, they could be required to stay open longer or even convert to an electronic system from paper? I mean, how far does this judgment go in that regard? No, Your Honor, I don't believe it does. And to your earlier question to opposing counsel, I believe the short answer is the judgment requires nothing more, the injunction requires nothing more than to stop the policy that's producing these delays. That's the no-access-before-processing policy, which is effectively the same policy that was enjoined in the Planet litigation In Planet, it was applied to paper. Here, it's applied to electronic filings. All they need to do is stop that policy, and what they do next, Judge Nye did leave that up to the state. But what we do know is that they have reasonable alternatives that are available to them, and that's where we look to the second part of the rigorous scrutiny test, which asks or puts the burden on the administrator to demonstrate that there are no reasonable alternatives. And we know that there are. So I can speak to that now, if that would be helpful to the court, or I could go back to walking through kind of the broader application of the test, which is what I was intending to do. I'll defer to Judge Simon. Let me just continue where I was then, because I think analytically it's helpful to think of it as the two-part rigorous scrutiny test, where we address the first prong and then we turn to the second prong, and that's the test that Judge Nye correctly found the administrator failed to carry her burden under. And so this two-part rigorous scrutiny test, it's a reasonable and it's a common sense test. It gives the administrator the opportunity to demonstrate, first, a substantial probability that a compelling governmental interest would be harmed by providing undelayed or immediate access to the complaints at issue. And then, second, she has to demonstrate that there are no reasonable alternatives. If she fails to carry her burden under both of those prongs, at that point, the practice that is being challenged, the delay-causing practice, should be enjoined. It is unconstitutional. And again, what she does next is simply up to her, and we know that she has alternatives. So let me start with that first prong of the rigorous scrutiny test. The district court correctly found that the administrator failed to establish a substantial probability that providing undelayed access to the complaints at issue would impair any of her asserted interests. Okay, well, those are a lot of words. You agree that there's no First Amendment right to immediate access, correct? I think that is correct, and I want to be clear. We're talking about whether there's a per se right of access or a qualified right of access. Well, I'm starting at the top, and then we'll work our way down, okay? Very good. So, there is no First Amendment right to immediate access. Is that right? And I would say not necessarily, and here's the reason why. In Planet 3, the court recognized that there's no right, a per se right to immediate access, but there's a qualified right. So the answer to my question is that's correct. There is no immediate right. Now you go to there is a qualified right. Correct. Okay. How do you define the qualified right? A qualified right I would define as the government, here the administrator, has the opportunity to justify the restriction on access. And if we take it from the very top, Planet 3 holds that there's a right of access to new complaints that attaches when they are filed. And I know that we've heard the arguments about the administrative labels as to when something is deemed filed in the state of Idaho, but in the exact same sentence that the Planet 3 court says there's a right of access to complaints that attaches when they are filed, it goes on to state, i.e., when they are received. So this court used filed and received synonymously and equated the two in the paper world. And every decision, every court that has addressed this issue since Planet 3 has gone on to hold, agree with Planet 3, and hold that even in an e-filing environment, the right of access attaches when the complaint is received, which, to use e-filing language, is the point of submission. When the document is submitted to the court, that is the moment that it is received by the court. That is the moment that court clerks and staff can begin to work on it. Before you jump to what you think is Idaho's burden, if you go back to Press Enterprise 2, is that intermediate scrutiny or strict scrutiny that the Supreme Court is talking about? My understanding of Press Enterprise 2 is that that is a case that is applying strict scrutiny, and then this court in Planet 3 took the Press Enterprise 2 test and it applied it as rigorous scrutiny. And we have this two-part test. And I think a key distinction there would be if we're talking about strict scrutiny, there can be no alternatives, and under a rigorous scrutiny test, we look at whether there are reasonable alternatives. And the administrator here carries the burden of demonstrating that there are no reasonable alternatives, and that's the burden that the district court correctly found she did not carry, because there are. And I know that in Planet, I guess it's 3, I get mixed up on how many planets we have, because we've, of course, dropped in actual planets. So in Planet 3, it's really framed as time, place, and manner, right? No, I do not agree with that. I think in footnote 9 of the Planet 3 decision, it explains why time, place, and manner is not the correct test and why it does not apply. Okay. So you would agree that that's really, and there are courts that have used time, place, and manner in these kind of restrictions, but it did seem to me out of place. So you would agree that Planet 3 doesn't require us to put it in the rubric of time, place, and manner? I would very much agree with that. It's not the correct test. I would note, just because it's been argued, that even if you run this through the time, place, and manner math as Judge, as the concurring opinion did in Planet 3, you still reach the same result for the same reasons that we would have here, but we don't need to apply that test. We apply the two-part rigorous scrutiny test, which starts with the first prong, which asks, has the administrator met her burden of demonstrating a substantial probability of harm to any of her asserted interests if she provides the public with undelayed access to the new complaints? And if I may speak to that, she asserts three interests, and she does not support any of them. The first, there's a lot of arguments that are made. They generally fall into these three categories, the first being the need to correct clerical errors. However, the administrator does not identify a single instance where there has ever been harm that has resulted from the public seeing an uncorrected complaint, let alone demonstrate a substantial probability of harm. Her next interest is an interest in preventing confusion, and here she relies on speculation about what could potentially happen if the public saw a complaint that had been submitted but was later rejected. And again, she does not identify a single instance where there's ever been actual harm that resulted from this hypothetical scenario, let alone a substantial probability of harm. And that brings us to her third asserted interest, which is protecting confidentiality. And here, just like in the Planet case, there simply is no connection between the clerk review in Idaho and this asserted interest of protecting confidentiality. And I can explain. As an initial matter, the complaints at issue here, and this is not disputed, the complaints at issue here are not confidential as a matter of law. So we're not talking about juvenile complaints or petitions. We're talking about non-confidential civil complaints. And the record confirms in three separate instances that clerk review in Idaho does not entail looking for any confidential information that should have been omitted or redacted. And we see this in at least three separate places. First, at SCR 197, we have a list of the things clerks are looking for during their ministerial review. Looking for confidential information is not included in that list. Second, the rules in Idaho expressly state that clerks will not look for information that was omitted or not redacted. We have this at the e-filing rule 15A. We also have this at rule of civil procedure 2.6A. And lastly, we have a sample of four months of rejection data that provides detailed reasons for why complaints were rejected. And this is at 7 ER 1433 and 45 through 76. And that data shows not a single complaint was rejected by court clerks because they found some information that should have been omitted or redacted, which is not a surprising result since the rules already tell us that they are not going to look for that. So there's simply no connection here between the restriction, the clerk review, and the asserted interest, which is protecting confidentiality. So the administrator fails to carry her burden out of this first prong of the test because she fails to demonstrate a substantial probability of harm that any of those asserted interests would be harmed if they provided undelayed access. Then we now go to the second part of the test. If the panel has any questions as to the first, I'll move on. Just as a technical matter, would we even reach the second step if we agreed with you on the first? My understanding is the appellant carries the burden of establishing both prongs. So I suppose failure to carry any one would be fatal, but we don't need to do that because we carry on to the second prong, which is reasonable alternatives. And we do know that there are reasonable alternatives because the record confirms that courts across the nation provide undelayed access to new civil complaints in various ways that are equally available to the administrator here in Idaho. Again, these various ways generally fall into three different categories, the first of which is auto-accept. And all that entails here is simply configuring the system, the existing e-filing system, to automatically accept new filings as they come in rather than holding them for clerk acceptance. And states across the nation use this. We've heard about the federal courts, and yes, the vast majority of federal courts use this system, but so do states. The states of Alabama, Connecticut, Hawaii, Nevada, Utah, all of those states use this functionality. And the state of Nevada uses the same Tyler e-filing system used by the state of Idaho. The Tyler e-filing system has this auto-accept functionality built into it. It's a free, out-of-the-box, turnkey solution. It simply needs to be activated. And again, no cost involved. And it can also be configured. I wanted to speak to this real quick. I'm going to let Idaho respond to that because I thought that Idaho said, yeah, that could be possible, but they also have internal requirements. And if you did this, you then are left with two computer systems that are not communicating with each other, which causes both a cost and an administrative problem and, in fact, maybe a significant time issue for the clerk's office. So doesn't the cost and time of that have to be weighed in? I'll speak to both of those. I believe first we have the different systems. I don't believe the record supports that there's any conflicting systems. They have a Tyler e-filing system, a Tyler case management system. The auto-accept just would send it straight on through. That's just the configuration piece. As far as the administrative piece, yes, the administrator submitted to the district court numerous declarations that were effectively stating that auto-accept would result in increased workload for incorrectly submitted filings. However, Judge Mitchell Brown, at paragraph 7 of his declaration, he acknowledges that this is minimal for individual transactions. So he and the other declarants are relying on some larger aggregate of filings, which means they were not looking at the correct universe of filings because the record shows that for this AA civil category of complaints at issue in this case, the number of incorrectly submitted filings is incredibly small. We see that, and this is back to that four-month sample of rejection data. The sample shows that the number of rejections per court per month was fewer than two. And... Just another technical question. Could they turn on the auto-accept just for the category of cases that you're talking about? Yes, they can. And we see that in the record at SER 79 through 80. That's the deposition testimony of the e-filing vendor who explains this. So when we're looking at this correct universe of filings, I just gave you the stat for number of rejections per court per month, and Judge Nye, looking at the same sample, expressed it differently in terms of the statewide average per day, which was all counties combined, about four or five. So Judge Nye himself, a former Idaho State Court judge for approximately 10 years, concluded that was hardly burdensome. So the administrator fails to carry her burden of demonstrating that she doesn't have auto-accept as a reasonable alternative. Now, if she does not want to use auto-accept, that's fine. She does not have to. She still has other alternatives. A second one being the Tyler Press Review Q. This would just be an add-on Tyler product that is effectively a web portal that displays new filings, displays submitted filings, while they're waiting for clerk processing and acceptance. And we see states using this solution as well. This is states in California. Now, Idaho then responds to that by laying out what would be basically scraping and various hacking issues with that. What is your response in terms of the burden and whether the state really has firsthand the ability to make that judgment and not the court? A few things, Your Honor. I think as an initial matter, the record does not support that this has ever happened with this product, even though it's being used in California, Georgia, Texas, and Vermont. The administrator admitted in a discovery response that she has no evidence of any bad outcomes or problems from this pre-processing access. As far as how it could be configured, she has options. We see in the record that some courts provide this Press Review Q. only at terminals at the courthouse. Or it could be provided remotely online. But there are options. So if she were to provide it remotely online, that's one thing. Could they charge the press for this add-on, so to speak? Yeah, this is the one alternative which Your Honor referenced earlier, which is, I believe, $108,000. So yes, that is a cost that Tyler charges for this add-on. That's Tyler. But could they charge the press for each of the access, whether it's at the courthouse or electronically? Could there be an access fee? Oh, I see. I suppose there could... Would that be okay within your First Amendment construct? I believe it would be. We've seen instances where courts do, in fact, in order to access the complaints. That is out there. Courts do that. That has not been something that Courthouse News has ever challenged. So we have the Tyler solution. And I would just like to briefly move on to address one more solution. Because if the court does not, the administrator does not want to purchase the Tyler product, they don't have to. They have yet another option, which would just simply be developing their own. And all that would be would be, you know, modifying their website in order to create an access portal to display the submitted filings while they are awaiting clerk processing and acceptance. And here, again, we see examples of courts that use this. We have Arizona. We have New York. We have Florida. We have Orange County in California. All of these courts have effectively done this themselves. And again, they can be configured in ways I just described. It could be a remote solution, but it could also be secured, requiring a registered username and password. Or it could be at the courthouse, at the local terminals. There's flexibility. Ultimately, the court has the options. So when we have these various options, the administrator does not dispute or deny that they exist. And with respect to simply building her own, she would have a lot more flexibility in terms of cost. Arizona developed its own solution for only $12,500. And that's in the record. As far as New York, as far as time, I believe that was asked earlier as well. New York developed its solution within six weeks of the injunction entered against it in the Tingling case. And that began as just one county. From there, New York scaled it out to provide preprocessing access to all counties. And there in New York, it's a public-facing queue. It's not behind a paywall. It's not behind username and password. It's a public-facing queue on its website. And now, almost 10 years later, that solution remains in place, and it works great, and there have not been any problems. So the administrator does not deny any of this. When it comes to this particular alternative, the best she can do is point to a lack of information. But that is not sufficient to carry her burden under the rigorous scrutiny test, especially where, as here, she had the opportunity to make her record and carry her burden. The record shows that while this case was pending, she was talking to a vendor about developing a new portal for the state of Idaho. In connection with those conversations, she could have asked the questions and obtained the information she now claims she doesn't have. She could have asked about the cost. She could have asked about how long it would take. She could have asked about the resources involved. She simply did not do so, and that's in the deposition testimony. I'm at time, Your Honor. If I may just make one final point, and then I will stop. I just wanted to point out, the administrator's lack of will does not establish a lack of reasonable alternatives. The district court's judgment should be affirmed. Thank you, Counselor. I think I promised you a couple minutes of rebuttal. Thank you very much, Your Honor. This is not about a lack of will. This is about a lack of reasonable alternatives. And we've noted for you, and CNS ignores a very critical part of the record, which is that Jennifer Dvorak, Chief Information Security Officer for the Idaho Courts, starts at page 16 of the record. 216, I'm sorry, 216 of the record. You might want to make sure you're speaking into the microphone. Oh, I'm sorry, page 216 of the record. And that is, she was hired to establish a formal cybersecurity system for us in 2021. She then used the Center for Internet Security's top 18 critical controls as the framework for that assessment. They're important to creating appropriate cybersecurity. And she then asked Tyler to confirm for her that they indeed meet this, and Tyler refused. And that is in the record. So when CNS is representing that this is no big deal, she has all the information she has, that is not accurate at all. We actually specifically requested that information from Tyler, both for our current case management system and e-file and serve, which they refused to provide. And we're still under contract, but almost in time here done. We then specifically asked them for their press review queue to assure us that it meets these very guidelines, and they refused to provide that information. And that is also in the record before you. So when it comes to the press review queue, it is disingenuous to say that we just have ignored it and we don't have the will. We have the will. Our vendor that we have committed an incredible amount of money to has refused to provide us with the cybersecurity details, information, and comfort that we need in order to make informed decisions and deem it a reasonable alternative. With respect to auto accept, again, Mr. Federle noted that and did finally concede that there is not a right to First Amendment, right to access immediately. He then calls it there's got to be no, you know, there's got to be a reason then for why we don't have it immediately, and you need to justify that and it needs to be reasonable. When you look to that, there's a lack of clarity then as to what would timely access be. Is it within a business day? Is it within two business days? We know that the courts, circuit courts, have said within a business day or two is sufficient. If the Ninth Circuit is going to make a decision as to what is sufficient, that will provide great guidance to the courts that are within this jurisdiction that if it takes a business day or two in order to have access to these lodged complaints, then that's what it is, and you can bet Sarah Amundson and the Idaho Supreme Court will figure out how to make that happen with all of its counties. Ada County is already doing that, and that's in the record before you. We already meet. It's our biggest county. It's where Boise is, and we already meet that burden of within two days, 100% of our filings are processed and done. And so, you know, when you look, Your Honors, again, I come back to this concept of this isn't a lack of will. This isn't a lack of respect for, of course, the First Amendment. It's the practicalities that exist with respect to managing judicial resources, efficiency for the clerks, and the record is replete with how onerous the review would be if it's done on the back end, and that that will also require and potentially prejudice litigants who do file mistakenly. Fifty-eight percent of the rejections in Adam County were because they were supposed to be in Ada County. If you're out of statute of limitations, you're done as a litigant. The State of Idaho has tried to balance those needs along with providing timely access to its complaints, and that's why it's taken the position that a lodged complaint does not have the First Amendment protections under Planet 3, but a file does, and that's why immediate access is provided at that time. So thank you. Appreciate the time very much. Thank you. I would just like to say that I want to compliment both counsel because your facility with the record is amazing and very helpful, so thank you. Thank you. It is an honor to be here. Thank you.
judges: McKEOWN, SUNG, Fitzwater